## BASSETT *vs.* HOLBROOK AND OTHERS.

The plaintiff, who was the holder of three promissory notes secured by a mortgage of real estate, executed a written instrument, which purported to be a conveyance of the same to C. and also to be a power of attorney, authorizing C. to transfer them.    Although there was a secret understanding between the plaintiff and C. that the proceeds of the notes, when collected, should belong to the plaintiff, the transaction was accompanied by such circumstances, as to induce the maker to believe that C. had purchased them for a valuable consideration.    C. having died, his administrators, to avoid litigation with the maker who claimed that the notes were procured by fraud, discharged them and received from the maker a new note for a less amount, secured by a mortgage, which, with other real estate, embraced the premises included in the plaintiff's mortgage.    On a bill in equity against the mortgagor and the administrators of C., it was held, that the plaintiff was estopped from denying the validity of said instrument as an assignment of said mortgage and the notes given him, and that the bill, which was not adapted to obtain any relief to which the plaintiff might be entitled as the equitable owner of the note given to said administrators, ought to be dismissed.

THIS was a bill in chancery, brought by Charles Bassett against Daniel Holbrook, and the administrators on the estate of Clark Miles, deceased, for a decree against the defendants, foreclosing all their right in equity to recover certain premises, mortgaged by said Holbrook to secure certain notes, given by him to the plaintiff, praying also that the court would order that said administrators should deliver to the plaintiffs the notes and mortgage described in the bill, and an instrument in writing executed by the plaintiff, by which said administrators claimed that said notes and mortgage were assigned by the plaintiff to the deceased.

The defendants, having filed an answer to the plaintiff's bill, the case was referred to a committee from whose report the following facts are obtained, which are all that bear materially upon the points discussed and decided.

On the 13th day of June, 1853, the defendant, Daniel Holbrook, purchased of the plaintiff the premises described in the bill, with other property, for the sum of fourteen hundred

and sixty-five dollars, and therefor executed to the plaintiff his three several promissory notes, all dated June 13th, 1853, one for $365, payable July 1st, 1853, with interest; one for $500, payable July 12th, 1853, with interest; and one for $600, payable August 1st, 1853, with interest, and to secure the payment of said notes, executed to the plaintiff a mortgage of the same premises.

At the time of said purchase, and the execution of said notes and mortgage, Holbrook was not mentally incompetent to transact business, but he was an old man, eccentric in his habits, weak in mind and judgment, improvident, and not capable of prudently and properly managing his affairs, and was a suitable and proper person for the appointment of an overseer over him, to advise, and direct him in the management of his business. In the latter part of the month of June, 1853, and after his purchase of the plaintiff was known, the selectmen of the town of Seymour appointed Sylvester Smith, of said town of Seymour, to be his overseer, pursuant to the provisions of the statute, who accepted said trust.

The purchase of said premises by Holbrook was an unnecessary, and improvident one; he had no means of paying the notes when they should mature, and before said purchase the plaintiff was told by a son of Holbrook not to deal with his father, for he was incompetent and incapable of transacting business, and that it would distress his family, to which the plaintiff replied that he, (the son,) had better go home and attend to his own business.

When said note of $365 and said note of $500 severally matured, the plaintiff placed them with the other note of $600, and said mortgage deed, in the hands of George P. Shelton, Esq., an attorney and counsellor at law, with instructions to commence suits on said two first mentioned notes, and he pursuant to said instructions, put them severally in suit, returnable to the county court to be held at New Haven, on the first Tuesday of September, 1853.

Said overseer, after his appointment, applied to the plaintiff to take back the premises and cancel the purchase, which the plaintiff refused to do; and thereupon said overseer employed Harris B. Munson, an attorney, in behalf of said Daniel Holbrook, to take the necessary steps to procure the rescinding of said purchase, and to contest the validity of said notes. The suits brought upon said two notes were continued from the September term to the December term of the county court for New Haven county, at which term, by reason of mistake in said Munson's name not being entered as appearing for the defendant, without the knowledge or consent of said Holbrook, or his overseer, judgment was rendered by default against Holbrook, in both suits, for the amount of debt and costs in each respectively.

On the 26th day of August, 1853, Clark Miles, of said Seymour, then living, but since deceased, was intending to leave in a few days for the west, and the plaintiff was desirous of accompanying him, and on said day the plaintiff and Miles repaired to the office of George P. Shelton, Esq., his attorney, in whose hands said notes and mortgage had been left as herein before found, when the plaintiff informed said attorney that he had sold his interest in said notes, and mortgage, to said Miles; that he was going west, and did not expect to return, and requested said attorney to prepare an instrument conveying his interest in said notes and mortgage of said Holbrook to said Miles, so that said Miles could prosecute the suits then pending on said two notes at Miles' expense, and also that said Miles should pay all the expenses, including said Shelton's bill, that had already accrued thereon.

Said Shelton, not being able to prepare the instrument at that time, agreed to have it ready the next day for execution, and thereupon Miles requested Shelton, when said conveyance was executed by the plaintiff to keep it for him, and prosecute the suits, then pending on said two notes, to judgment, as Miles would not be able to see him

again before he left for the west. Shelton suggested to Miles that he would execute a receipt to him for the notes and deed, and it was arranged that Shelton should prepare the assignment of the notes and mortgage according to the aforesaid instructions, that the plaintiff should come the next day and execute it, and leave the same with said Shelton, and Shelton was to give to the plaintiff the receipt to deliver to said Miles.

Pursuant to said instructions and arrangement, Shelton prepared the assignment and receipt, and on the 27th day of August, 1853, the plaintiff executed the following assignment left with Shelton :

" Know all men by these presents, that I, Charles Bassett, of the town of Seymour, in the county of New Haven, and state of Connecticut, of the first part, in consideration of the sum of one dollar, and other valuable considerations received to my full satisfaction of Clark Miles of said town, of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, assigned, transferred, and set over, and by these presents do grant, bargain, sell, assign, transfer, and set over unto the said party of the second part a certain mortgage, bearing date the 13th day of June, A. D. 1853, made by Daniel Holbrook, of said town of Seymour, to secure the sum of fourteen hundred and sixty-five dollars, together with the notes of hand therein described, and the money due and to grow due thereon, with the interest, to have and to hold the same unto the said party of the second part, his executors, administrators, and assigns, for his sole use, benefit, and behoof forever, subject only to the proviso in the said mortgage mentioned. And I do hereby make, constitute, and appoint the said party of the second part my true and lawful attorney, irrevocable in my name, but at his proper costs and charges, to have, use, and take all lawful ways and means for the recovery of the said money and interest, and also to prosecute in my name all suits now

pending thereon, and in case of payment of the said notes, to discharge the same as fully as I might or could do if these presents were not made.

And I covenant for myself, my heirs, executors, and administrators, that I am the true and lawful owner of the said notes and mortgage, and that I have just right, full power and authority to sell, assign, and dispose of the same, and that there is now owing thereon the full amount of said notes and interest. In witness whereof I have hereunto set my hand and seal this 27th day of August, A. D. 1853.

CHARLES BASSETT.  [L. S.]

Shelton then executed the following receipt, and gave it to the plaintiff to deliver to Miles :

"Received, Seymour, August 27th, 1853, of Charles Bassett, a certain mortgage-deed, dated the 13th of June, 1853, and made by Daniel Holbrook, to secure three notes of hand, amounting to the sum of $1,465.00, with an assignment of said mortgage and notes to Clark Miles. It being understood that said notes are left with me for collection in favor of said Miles; also some other papers relating to the land mortgaged."

On the evening of said 27th day of August, said Miles signed and executed upon, and immediately under such receipt the following certificate, which he left with the plaintiff:  ·

" The proceeds of the above mentioned papers and notes is to come to Charles Bassett."

On the 20th of September, 1853, Miles died intestate.

On the 29th of September, 1853, the defendants, Hiram Upson and Mary Ann Miles were duly appointed administrators on the estate of said Miles, deceased, and entered upon the execution of their trust; were notified by said Shelton of said assignment of said notes and mortgage, and inventoried the same as part of the estate of said Miles, deceased, believing the same to be the property of said· Miles; and from the date of said assignment, said Shelton

acted as the attorney of said Miles, and of his administrators after his death, in the management and prosecution of the pending suits upon said two notes to judgment, and at their expense.

On the 24th day of October, 1853, the plaintiff returned from the west to the town of Seymour, and soon after his return called upon said Shelton, and showed to him the receipt and certificate, and claimed that said Miles had never paid him anything for said notes ; that the receipt and certificate was all the evidence he had that said Miles had not paid him, and requested Shelton to give up to him said notes, mortgage, and assignment, which said Shelton declined, without the authority and direction of the administrators on said Miles' estate, for whom he then held the same ; and the plaintiff was then advised by said Shelton to present his claim against the estate of said Miles.

Soon after, the plaintiff called upon the defendant, Upson, and showed to him said receipt and certificate, and said that he had transferred the notes and mortgage to said Miles, but had received no pay for them ; that he wanted to get his papers back, and was informed by said Upson that he could not consent to give up the papers.

The plaintiff never presented any claim for the consideration of said notes against the estate of said Miles for allowance, and no demand for the delivery of the papers was ever made by the plaintiff, or any one in his behalf, upon said Shelton or the defendants, except as before stated, until on or after the 21st day of January, 1854, on which last mentioned day the plaintiff executed to his father, Abel Bassett, a power of attorney, to act in his behalf, under which power, sometime in the month of January, 1854, the said Abel Bassett made a formal demand of said Upson, as administrator, for the delivery of said notes and mortgage.

When judgment had been rendered by default against Holbrook, notice was given by Holbrook's overseer to said administrators that said judgment had been obtained by

mistake, and that the validity of the notes would be contested on the ground of fraud in their procurement, and of the incompetency of the said Holbrook to give the same; and to avoid the expense of a litigation, said administrators and said Holbrook, by the advice and consent of his said overseer, agreed to a compromise on the 19th day of January, 1854, by which the said Holbrook, in consideration of the giving up, and discharging said three notes, given by him to the plaintiff, and said judgments thereon, by said administrators, executed and delivered to said administrators his note of that date for the sum of twelve hundred and fifty dollars, payable two years from its date, with interest, and secured the same by a new mortgage upon the premises described in the bill, and certain other additional real estate of said Holbrook not included in the first mortgage, which new note and mortgage were accepted and received by said administrators, in consideration of said Holbrook's giving up further legal proceedings in the premises, in full satisfaction and discharge of the said notes, judgments thereon, and mortgage described in said bill. Thereupon said administrators executed and delivered a discharge of said notes, and the judgment obtained upon them; and in pursuance of an order then given by said administrators, said notes, judgments and executions were delivered by said Shelton to said Holbrook.

On said 19th day of January, 1854, and at the time of said compromise and settlement, neither said Holbrook, nor his overseer, had any notice that the title of said Miles to said notes and mortgage, or the validity of the assignment, by the plaintiff to said Miles, was questioned, and all their said acts and doings, relating to said notes and mortgage, were without fraud, in good faith, and with the full belief that said notes and mortgage were the property of said Miles' estate, by virtue of said assignment of the plaintiff to Miles. At the time of said compromise, said administrators had notice as herein before stated; but said administra-

tors fully believed that the claim, set up by the plaintiff to said notes and mortgage, was wholly groundless and untrue, and said administrators acted in good faith, and without fraud, believing that said notes and mortgage were the property of Miles' estate, by virtue of said assignment, and that if the plaintiff had any claim on account of said notes and mortgage, it was against the estate of said Miles, and to be presented, with the other claims, to the commissioners upon said Miles' estate.

On the 15th day of April, 1854, said Holbrook paid said administrators the interest on said note of $1,250, and $550 of the principal.

The assignment of said notes and mortgage, made by the plaintiff to said Miles, on the 27th day of August, 1853, was intended to transfer the legal title, and to cause it to be understood and believed by the said Holbrook, and the creditors of the plaintiff, that said Miles was the owner of the same.

Said Miles never paid to the plaintiff any consideration for said notes and mortgage. And said assignment and certificate, before mentioned, were executed upon the secret understanding and agreement between the plaintiff and Miles, that the proceeds of said notes, when collected, were to belong to the plaintiff.

Upon these facts, the court ordered the plaintiff's bill to be dismissed. The defendant, by motion in error, then brought the record before this court for revision.

*Baldwin* and *Clark* in support of the motion.

1. The plaintiff acquired, by his mortgage, the legal title to the premises sought to be foreclosed; and yet continues to hold it. It was never conveyed to Clark Miles. Neither the legal, nor the equitable title to the mortgage debt passed by the assignment to Miles. The notes were not negotiable. Miles paid no consideration for the assignment, and gave to the plaintiff a written declaration of trust.

2. The power of attorney to Miles, not being coupled with any interest, was revocable, while it remained unexecuted, and was revoked by his death. His administrators had neither a legal, nor equitable interest, nor any power to interfere with the rights of the plaintiff. It was their duty to deliver up the papers, or direct Shelton to do it, when required by him. Though the plaintiff had intended to transfer the legal, not the beneficial, interest to Miles, he did not in fact transfer it. And Miles, who had paid nothing, and done nothing, had no equitable right to call for it. Miles' administrators were notified, before any act done by them, that the plaintiff remained the legal and equitable owner of the notes. The papers were not left by the plaintiff voluntarily under their control. The re-delivery of them was demanded and refused. They had no authority, legally or ostensibly, to act in behalf of the plaintiff, or to discharge the notes in any character. They never undertook to act in his name, but in their own behalf as owners, in which character they had not a shadow of interest, legal or equitable.

3. Although at the time of the compromise Holbrook had no notice that Miles' title was questioned, he did not trust to their discharge, or to their possession of the notes. He took an order on Shelton and an indemnity. He was, therefore, put upon inquiry. Had he inquired of Bassett, he would have known Miles' administrators had no power to discharge, and no interest in the notes. They had neither apparent legal ownership, nor the actual custody of the papers. Even a purchaser, for a valuable consideration, would not, under such circumstances, be protected otherwise than by his covenant of indemnity. He purchased the mortgaged premises of the plaintiff for $1,465, with other property, and secured the purchase-money, by notes and mortgage. Full value was received for the notes, and no fraud is found by the committee. If there had been, and he had sought in equity to set aside the purchase, he must have re-conveyed

the property to entitle himself to relief. But he has kept the property, and, at the time of the bringing of this bill, without the payment of a dollar of the purchase money.

4. Holbrook's note for $1,250 was wholly without consideration, and void, and given on his part by mistake, for want of due inquiry. The administrators knew, and concealed from Holbrook, the demand upon them by Bassett. It is not now pretended that they had any interest or power. Holbrook therefore incurred no liability to them by the note.

5. The plaintiff has the legal title to the land mortgaged to him, and subsequently to Miles' administrators, who were claiming an interest.

The plaintiff's title, which he still holds, had become absolute at law, before the transaction with Clark Miles.

If Holbrook had been a purchaser, and had given his note for the purchase money, of property improperly sold by a trustee, the *cestui que trust* would always have power to reclaim it, until the actual payment of the purchase money. What he has paid, since the petition was brought, was paid with full notice of our rights.

6. The transaction with Miles' administrators did not prevent his setting up a defence before the committee, which he has done, and which has been found against him. Nor has he, in any respect, been led to change his position to his injury, by giving the note and mortgage to the administrators of Miles, which being without consideration, are void. So far as the record shows title, Miles' administrators appear to have an interest under Holbrook in the equity of redemption.

*Blackman* and *H. B. Munson*, against the motion, claimed that the plaintiff could take nothing by his bill.

1. The assignment of the note and mortgage, by the plaintiff, is sufficient, in terms, to transfer in effect, both the legal and equitable title to the notes, and their security, and that such was the intent of the parties is shown from the terms of the instrument itself, and it is also found, as a fact, by

the committee. 1 Sw. Dig., 434. *Crosby* v. *Brownson*, 2 Day, 425. *Austin* v. *Burbank*, 2 Day, 474. *Lyon* v. *Summers*, 7 Conn. R., 399.

2. The secret understanding between Miles and Bassett, that the proceeds of said notes, when collected, were to be paid over to Bassett, does not alter the effect of the assignment, either in its legal, or equitable, bearing, upon this transfer, for the legal and equitable title in effect, would remain in Miles and his legal representatives, until re-assigned. Miles and his representatives would still have the exclusive right to collect the notes, and when collected they must account to Bassett. This was a voluntary arrangement, entered into by Bassett, and by it he must be bound. 2 Sw. Dig., 45–60. A court of equity would not cancel such an assignment, even if Holbrook had not been induced by it to change his position. For it was not only done voluntarily, but it was done to deceive Holbrook and the public. 2 Sw. Dig., 19. And unless this assignment is cancelled, or its legal effect done away with, by the interposition of a court of equity, Bassett has no claim upon these notes, for the title will still remain in Miles and his representatives, where the assignment has left it.

3. The compromise between the administrators and Holbrook was a valid one. The defendant, Holbrook, had a right to treat their claims as assets belonging to their administrators. *Crosby* v. *Brownson*, 2 Day, 425. And more especially, as the plaintiff had led him to believe, by this very assignment, that these notes were the absolute property of Miles he is estopped, by his own act and deed. *Stowe et al.* v. *Wise*, 7 Conn. R., 214. 1 Sw. Dig., 637. The considerations of this compromise were good. Holbrook, on his part, abandoned a defence which he had a right to make, and gave a mortgage of other property to secure the note for $1,250. The discharge was therefore valid. It is no answer to say that Holbrook had no defence in point of fact, because he supposed he had, and he had a right to try that question

to the jury.    Every compromise is based upon the concession of some right.

HINMAN, J.    The plaintiff claims to be in the condition of an ordinary mortgagee, seeking the aid of the court to extinguish the defendant's outstanding equity of redemption in the mortgaged premises.    And the question is, whether he can fairly stand upon this ground.    Here, it is proper to remark, the question is not what rights he may have against the administrators of Clark Miles, or what right, under a proper application, he may have to Holbrook's note of $1,250, and the mortgage given to the administrators to secure it.    The bill is not adapted to any relief he may be entitled to, as the equitable owner of that note, and sets up no facts laying the foundation for any such relief—and such facts, as do appear in the report of the committee on that subject, appear only as part of the defendant's case; as going to show that no relief can be granted to the plaintiff as mortgagee, under the deed of the thirteenth of June, 1853. Has he, then, any rights as such mortgagee?    The facts, which appear in the report of the committee, are very voluminous, and it is unnecessary to enter much into detail, in respect to them.    It is sufficient to say, that the plaintiff procured the notes and mortgage described in the bill, under such circumstances as to render it quite possible, not to say probable, that a court of equity would have compelled him to take back the property, for which the notes were given, and to give up his securities therefor.    But on an application, by the overseer of Holbrook, to cancel the purchase out of which the claim originated, he refused to do so, and commenced suits on two of his notes which had become due, and soon after made a sham transfer of his notes and mortgage to Miles, but under such circumstances as effectually to deceive Holbrook and his overseer, as well as his own counsel, and all others, to whom the transactions became known, by inducing them to believe that Miles had pur-

chased the claims for a valuable consideration, and was, therefore the equitable owner of them.   Under these circumstances, Miles died, and administrators were appointed on his estate, who, supposing the notes belonged to the estate, treated them as part of it, and though notified by Bassett that they belonged to him, yet for some reason, they did not believe it, and finally, in consequence of being threatened with proceedings to contest the validity of the notes, on the ground of fraud in procuring them, and of the incompetency of Holbrook, and to avoid litigation, the administrators made a compromise, and settlement with Holbrook, he acting by the advice of his overseer, under which the original notes were given up, and discharged, and, in consideration thereof, Holbrook executed his note for $1,250, and secured the same by a mortgage of the premises, described in the bill, together with certain other real estate not included in the first mortgage.   Neither Holbrook, nor his overseer, had any knowledge that the title of Miles to the notes and mortgage, or that the validity of the assignment to him, was questioned by any one.   But they both acted in the utmost good faith, in the belief that the notes belonged to Miles' estate, by virtue of the assignment to him, and, as part of his estate, that his administrators had full authority to settle any disputed claim in respect to them.

These are but a few of the facts in the case, but they are, we think, sufficient, with such others as will incidentally be noticed hereafter, to show that as between the plaintiff and Holbrook, the plaintiff is estopped to deny the validity of his assignment to Clark Miles; and that the assignment operated, not merely as a power of attorney which was revoked by the death of Miles, but as a transfer of such an interest in the notes and mortgage, as on his death, was sufficient to enable Holbrook, who had no knowledge that the plaintiff claimed any interest in them, to make a valid compromise in respect to them with the administrators; and as Holbrook has acted in good faith upon the title, which the conduct of

the plaintiff induced him to believe the administrators had, he ought now to be protected in the rights, which he supposed he acquired under his compromise with them. No one would have questioned the validity of a settlement with Miles, before his death, whatever might have been the secret agreement between him and the plaintiff; and as one great object of the assignment was to induce Holbrook to believe that the beneficial interest in the notes was intended to be conveyed by it, and as such an interest would of course vest in administrators, on his death, and as the instrument itself was adapted to the transfer of such an interest, and was an improper instrument to be used as a mere power of attorney, we think that the plaintiff has no right to complain, so far as the rights of third persons, acquired under it, are concerned, because they have acted as he intended they should think they had a right to act. As between Miles and the plaintiff, the assignment may be admitted to be a mere power of attorney, which was revoked by the death of Miles, and, therefore, conferred upon his administrators no interest in the subject matter. But it was more than that upon its face, and was purposely made so in order to induce others to believe that the debt was absolutely assigned, so as to have become the property of the assignee. How then can the plaintiff be in a better condition than the owner of property who stands silently by, and and sees it sold to a *bona fide* purchaser, without giving any notice, or intimation, of his title? Yet nothing is better settled, than that such acquiescence will preclude the owner from afterward asserting his title.

But it is claimed that Holbrook has not been induced to change his position, in such manner as would operate to his injury, if the settlement is treated as void, because, it is said, he has not been deprived of any defence he might set up to the notes in the plaintiff's hand. We do not think that this is the true test, to determine whether he would be injured by suffering the plaintiff to treat his assignment as a power of

attorney merely. Holbrook has been induced to forego his right to bring a bill in equity to set aside the whole transaction with the plaintiff by which he became the purchaser of property he did not need, and which the committee say, it was improvident in him to purchase; and although there may not enough appear in the present case to show that he could have succeeded in such an application, it is still quite obvious from the finding, that he had, at least a very plausible ground for making such an application. He has also been induced to mortgage other property, not conveyed to him by the plaintiff, to secure his note to the administrators of Miles. And in addition, he has, by a fair and equitable compromise and settlement of the controversy, avoided the necessity of an expensive and troublesome litigation. It appears to us, therefore, that it may fairly be said that he would be materially injured, by suffering the plaintiff now to treat his assignment as a mere power of attorney.

For these reasons, we think that the plaintiff is not entitled to a foreclosure, under his mortgage of the thirteenth of June, 1853, and as this is all that his bill enables him to ask, the superior court was correct in dismissing it, and there is no error in the judgment complained of.

In this opinion the other judges, STORRS and ELLSWORTH, concurred.

Judgment affirmed.